# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

JAN BYRD, as spouse and next friend of  )
Raymond Byrd, deceased,                  )
                                         )
        Plaintiff,                      )
                                         )
v.                                       )   Case No. 17-CV-0111-CVE-JFJ
                                         )
ACE AMERICAN INSURANCE                   )
COMPANY and TYSON FOODS, INC.,           )
                                         )
        Defendants.                     )
                                         )
GROENDYKE TRANSPORT, INC.,               )
                                         )
        Intervenor.                     )

## OPINION AND ORDER

Now before the Court are the following motions: Plaintiff's Motion in Limine (Dkt. # 37); Defendant Ace American Insurance Company and Tyson Foods, Inc's Motion in Limine and Brief in Support (Dkt. # 38); Plaintiff's Second Motion in Limine (Dkt. # 80); Defendant Ace American Insurance Company and Tyson Foods, Inc.'s First Supplemental Motion in Limine and Brief in Support (Dkt. # 81); and Defendant Ace American Insurance Company and Tyson Foods, Inc.'s Motion for Partial Summary Judgment and Brief in Support (Dkt. # 85).

### I.

On March 6, 2017, plaintiff Jan Byrd filed this case on behalf of her deceased husband, Raymond Byrd, alleging claims of negligence, negligent entrustment, and wrongful death against Ace American Insurance Company (Ace) and Tyson Foods, Inc. (Tyson).[1] Plaintiff seeks

---

[1] In this Opinion and Order, the Court will refer to the deceased, Raymond Byrd, as "Byrd" and will refer the named plaintiff, Jan Byrd, as "plaintiff."

compensatory and punitive damages in excess of $75,000. This case arises out of a traffic accident that occurred on January 3, 2016. Byrd was operating a tractor-trailer owned by Groendyke Transport, Inc. (Groendyke), and he was involved in a collision with Kent Redd. Dkt. # 2, at 2. Redd was operating a tractor-trailer owned by Tyson. Id. The collision occurred on Highway 75 in Washington County, Oklahoma, and both Byrd and Redd were traveling northbound on Highway 75. Id. at 3. Byrd suffered serious personal injuries and died following the accident.

Plaintiff claims Byrd was driving in the right lane of northbound Highway 75 and Redd was traveling northbound in the left lane of Highway 75.[2] Dkt. # 82, at 2. Plaintiff alleges that Redd attempted to make a right-hand turn from the left lane and the two tractor-trailers collided. Plaintiff's version of the events is supported by the testimony of three eyewitnesses who were in vehicles behind the two tractor-trailers. Mark Kane testified in his deposition that he observed Redd's tractor-trailer turn into Byrd's tractor-trailer, and the front of Byrd's vehicle was pushed underneath the other tractor-trailer. Dkt. # 82, at 3. Mark Marshall Kane also observed the accident, and he states that Tyson tractor-trailer driven by Redd crossed the center line to initiate the collision. Dkt. # 82-3, at 3. Katherine Anne Kane testified that the two tractor-trailers were side-by-side before the accident occurred and the Tyson vehicle was in the left lane, and she claims that she observed the collision. Dkt. # 82-4, at 3.

Defendants offer a completely different version of the events leading up to the accident. Defendants rely on GPS tracking data from the two vehicles, and claim that Redd was driving in the

---

[2] Defendants' motion for partial summary judgment does not substantially concern the facts giving rise to the accident, and the motion is focused on plaintiffs' negligent entrustment claim. Dkt. # 85. The Court offers a brief narrative of the parties' allegations concerning the accident only to provide context for the rulings on the motion for partial summary judgment and the motions in limine.

right-hand lane just before the accident. Dkt. # 87, at 2. Redd had left a nearby Walmart Distribution Center (WDC), and he had slowed down to 12 miles per hour in order to make a right-hand turn. Id. Plaintiff's accident reconstruction expert, Larry Owen, states that Byrd's tractor-trailer was going at least 50 miles per hour when the accident occurred. Dkt. # 87-1, at 3. Defendants state that the Oklahoma Highway Patrol (OHP) troopers who investigated the accident determined that Byrd was at fault for the accident and that they found no credible evidence that Redd entered the left-hand lane at any time before the accident. Id. at 4.

## II.

Defendants argue that plaintiff has no evidence to support her claim of negligent entrustment or her demand for punitive damages, and they ask the Court to enter summary judgment on these aspects of plaintiffs' claims.[3] Dkt. # 85. There is no evidence submitted in support of defendants' motion for partial summary judgment, and the motion is based solely on an alleged lack of evidence to support plaintiff's claim of negligent entrustment and her demand for punitive damages. Plaintiff responds that Tyson ignored evidence that Redd suffered from sleep apnea and that Redd had exceeded his hours of service at the time of the accident, and there is a genuine dispute as to whether driver fatigue caused or contributed to the accident. Dkt. # 90, at 10. Plaintiff claims that this evidence gives rise to a genuine dispute as to whether Tyson negligently entrusted a tractor-trailer to Redd and consequently acted with reckless disregard for the rights of others.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.

---

3   Defendants refer to plaintiff's "gross negligence cause of action," but plaintiff does not have a separate claim for gross negligence and this appears to be a reference to plaintiff's demand for punitive damages. Dkt. # 85, at 6.

3

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

When Redd was hired by Tyson, he underwent a physical examination and he notified the examining physician that a physician had previously told him that he had sleep apnea. Dkt. # 90-1, at 2. Redd passed his physical and he received a two year certificate to drive a tractor-trailer. Id.

4

at 4. Redd testified in his deposition that he had been fired by a previous employer, because his neck was "too thick" and the employer believed that he had sleep apnea. Dkt. # 90-2, at 9. Redd admits that he was diagnosed with sleep apnea and he did have a sleep apnea machine at one time. Id. at 19-20. However, Tyson did not require any additional sleep apnea testing or that he use a sleep apnea machine. Id. at 22. At the time of the accident, Redd had exceeded the number of hours that he was permitted to operate a tractor-trailer without rest, and he was operating his vehicle under a "convenience rule," under which Tyson authorized him to drive up to 20 miles to find a location to rest. Id. at 3-5. Redd could have rested while his truck was being unloaded at the WDC, but he claims that he was not tired and he did not rest during that time. Id. at 14-15. He states that he was fully alert at the time of the accident. Id. at 16.

"Negligent entrustment of an automobile occurs when the automobile is supplied, directly or through a third person, for the use of another whom the supplier knows, or should know, because of youth, inexperience, or otherwise, is likely to use it in a manner involving unreasonable risk of bodily harm to others . . . ." Sheffer v. Carolina Forge Co., LLC, 306 P.3d 544, 548 (Okla. 2013). To establish a claim of negligent entrustment, the plaintiff must show that a reasonable person knew or should have known that the person entrusted with the vehicle would be likely to operate it in a careless, reckless, or incompetent manner. Green v. Harris, 70 P.3d 866, 869 (Okla. 2003). A necessary element of a negligent entrustment claim is that injury result from the driver's careless or reckless operation of the vehicle. Clark v. Turner, 99 P.3d 736, 743 (Okla. Civ. App. 2004).

Defendants argue that plaintiff has no evidence that Redd's negligence caused any injury to Byrd or that Tyson should have known that Redd was likely to operate the tractor in a reckless or incompetent manner. Dkt. # 85, at 2. However, plaintiff has come forward with evidence that Redd

5

suffered from sleep apnea and that he notified Tyson that he had previously been told that he suffered from sleep apnea. When combined with evidence that Redd exceeded his legal hours of service, this could support a finding that Tyson negligently entrusted a tractor-trailer to a sleep-deprived driver. The circumstances giving rise to the accident are disputed, and plaintiff has eyewitness testimony that supports a viable theory that Redd's driving caused the accident. It is undisputed that Byrd suffered personal injuries in the accident, and plaintiff has produced evidence to support each element of a negligent entrustment claim. Defendants' motion for summary judgment should be denied as to plaintiff's negligent entrustment claim.

The Court also finds that the same evidence supporting plaintiff's claim of negligent entrustment could support a finding that Tyson acted with reckless disregard for the rights of others. Punitive damages may be awarded only if the plaintiff shows by clear and convincing evidence that the defendant has been "guilty of reckless disregard for the rights of others." OKLA. STAT. tit. 23, § 9.1. A person acts in reckless disregard for the rights of others if he "was either aware, or did not care, that there was a substantial and unnecessary risk that [his] conduct would cause serious injury to others." Gowens v. Barstow, 364 P.3d 644, 652 (Okla. 2015). The trial court must determine as a matter of law whether the plaintiff has produced sufficient evidence that a reasonable jury could find that a defendant acted with reckless disregard before instructing the jury as to punitive damages. Badillo v. Mic Century Ins. Co., 121 P.3d 1080, 1106 (Okla. 2005). Viewing the evidence in a light most favorable to plaintiff, there is eyewitness testimony supporting plaintiff's argument that Redd crossed into the other lane and initiated contacted between the two tractor-trailers. Plaintiff has also produced evidence that at the time of the accident that Redd had exceeded the number of hours he could remain in service, and there is evidence that Redd suffers from sleep apnea. This could

6

support an inference that Redd was sleep-deprived at the time of the accident and that Tyson should have been aware that Redd's sleep apnea created a heightened risk that he could be involved in an accident. The Court finds that defendants' motion for summary judgment should be denied as to plaintiff's demand for punitive damages.

### III.

Plaintiff and defendants have each filed motions in limine to exclude evidence at trial. Dkt. ## 37, 38, 80, 81. "The purpose of a motion in limine is to aid the trial process by enabling the Court 'to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitively set for trial, without lengthy argument at, or interruption of, the trial.'" Mendelsohn v. Sprint/United Management Co., 587 F. Supp. 2d 1210, 1208 (D. Kan. 2008). However, a court is almost always better situated to make evidentiary rulings during trial, and a court may defer an in limine ruling unless the party seeking to exclude evidence shows that the evidence is inadmissible on all potential grounds. Wright v. BNSF Railway Co., 2016 WL 1611595, *1 (Apr. 22, 2016). Plaintiff filed this case in federal court based on diversity jurisdiction, and the admissibility of evidence is generally governed by federal law. Blanke v. Alexander, 152 F.3d 1224, 1231 (10th Cir. 1998). State law concerning the admissibility of evidence will be considered only if the issue involves a "substantive" state rule of evidence, such as the collateral source rule or the parol evidence rule. Id. The parties are advised that all ruling on the motions in limine are preliminary.

### A.

Plaintiff has filed two motions in limine (Dkt. ## 37, 80), and she makes a total of seven arguments to exclude evidence. Three of those issues are not disputed by defendants. Defendants do not object to plaintiff's request to exclude evidence that Byrd or his estate received payments

from insurance, workers' compensation, or other sources following the accident, and defendants also will not seek to introduce evidence that Byrd filed for bankruptcy protection in approximately 1993 or 1994. In addition, defendants do not object to plaintiff's request to exclude purported hearsay statements made by Robert Painter. Dkt. # 86, at 5. Plaintiff's motion (Dkt. # 37) is granted as to these three undisputed issues.

Admissibility of OHP Accident Report and Testimony as to Fault

In two separate arguments, plaintiff asks the Court to exclude a report prepared by the OHP following an investigation of the accident scene by three OHP troopers. Dkt. # 37, at 2-5. In particular, plaintiff seeks to exclude page 3 of the OHP report that contains statements suggesting that Byrd was at fault for the accident, and she seeks to exclude a diagram of the position of the vehicles prepared by OHP trooper Dustin Thornton. Id. at 3; Dkt. # 61, at 3. Defendants agree that any determinations of fault made by OHP troopers should not be admitted at trial, but they argue that the remainder of the report and the diagram are admissible. Dkt. # 53, at 1-4.

The Court initially notes that plaintiff's argument is based solely on Oklahoma law, and she does not cite a single federal case or rule of evidence in support of her argument to exclude the report and diagram. See Dkt. # 37, at 2-3; Dkt. # 61, at 1-3. The Court finds that this by itself is a sufficient reason to deny plaintiff's request to exclude the OHP report and diagram. Plaintiff acknowledges that this is a diversity case and the admissibility of evidence is governed by federal law, and she makes no attempt to show that the cases she cite would constitute a "substantive" rule of evidence. Dkt. # 37, at 1. The Court notes that the admissibility of the report and diagram will likley become a moot point if the OHP troopers who investigated the accident testify at trial, because the troopers can testify about the factual findings of their investigation. Both sides agree that OHP

troopers can testify about the investigation and their findings as to the facts underlying the accident, and this may include factual statements tending to show that Byrd or Redd actually caused the accident.[4] However, the parties are advised that no witness, whether an expert, OHP trooper, or fact witness, will be permitted to testify that Byrd or Redd was at fault or was negligent, because that is the ultimate issue reserved for the jury. Plaintiff's request to exclude the OHP report and diagram is preliminarily denied subject to renewal at trial. The Court's preliminary ruling on this issue also disposes of plaintiff's argument that OHP troopers should not be permitted to testify as to the issues of fault or negligence.

Evidence of Byrd's Medical Conditions

Plaintiff claims that defendants may attempt to offer evidence that Byrd had medical conditions that contributed to the accident, but she argues that the evidence does not tend to show with "medical certainty" that the conditions had any role in causing the accident. Dkt. # 37, at 6-8. She argues that Byrd died from "multiple blunt force injuries" and there is no evidence that any pre-existing medical condition caused or contributed to his death. Id. at 8. Defendants respond that they have asserted an affirmative defense that Byrd was either partially or wholly responsible for the accident, and they should be permitted to offer circumstantial evidence that Byrd's medical conditions played a role in causing the accident. Dkt. # 53, at 7.

Following the accident, Byrd was taken to Saint Francis Hospital in Tulsa, Oklahoma, and the medical records show that the treating physicians believed that Byrd had suffered a "cardiac

---

[4] It is not clear what specific testimony plaintiff believes should be excluded, and this is a separate and independent reason to deny the motion in limine. Plaintiff acknowledges that the OHP troopers can testify about their investigation and factual findings. Dkt. # 37, at 5. This may necessarily include findings that are not favorable to plaintiff, but this does not convert factual findings into prohibited opinion testimony as to fault or negligence.

event that led to him wrecking" his tractor-trailer. Dkt. # 53-1, at 41. The cause of death is listed as "DIC [disseminated intravascular coagulation] and cardiac arrest." Id. Defendants have obtained other medical records pre-dating the accident, which show that Byrd had stents inserted into his heart in May 2015. Id. at 44. Byrd also suffered from hypertension, type 2 diabetes, chronic obstructive pulmonary disease (COPD), and retinal tears, and he was taking medication to treat his COPD, high blood pressure, and type 2 diabetes. Id. at 45. He was also taking anti-seizure medication and medication to prevent heart attacks. Id.

The Court finds that plaintiff's request to exclude evidence of Byrd's medical conditions should be denied. The evidence provided by defendants could permit a reasonable jury to find that Byrd suffered from medical conditions that contributed to the accident, especially considering that medical professionals believed that Byrd suffered a "cardiac event" just before the accident. Plaintiff argues that there is no direct evidence that Byrd was fatigued or suffering any symptoms that contributed to the accident, but defendants may rely on circumstantial evidence to rebut plaintiff's evidence as to causation or to prove contributory or comparative negligence. The Court notes that plaintiff is seeking to offer circumstantial evidence that Redd suffered from sleep apnea that caused him to be fatigued at the time of the accident, and it appears that plaintiff is seeking to impose a higher burden on defendants to introduce similar evidence as to Byrd's mental or physical health at the time of the accident. The Court will apply the same standard to plaintiff and defendants, and each party may seek to admit evidence of the drivers' physical or mental conditions at the time of the accident.

Evidence of Insurance Payments to Tyson by Groendyke's Insurer

Plaintiff argues that defendants should be prohibited from offering evidence that Tyson received an insurance payment from Groendyke's insurer. Dkt. # 37, at 8. In response, defendants do not address the specific issue raised by plaintiff and, instead, argue that they should be permitted to use evidence of Groendyke's internal investigation of the accident if they obtain such documents before trial. Dkt. # 53, at 8. The Court considers only the specific issue raised in plaintiff's motion in limine, and finds that defendants have not made an objection to plaintiff's request to exclude evidence of insurance payments to Tyson. The Court finds that plaintiff's request is unopposed, and defendants will not be permitted to use evidence of insurance payments to Tyson by Groendyke's insurer.

**B.**

Defendants have filed two motions in limine (Dkt. ## 38, 81), and defendants have raised a total of five issues. Plaintiff does not oppose defendants' request to exclude evidence concerning Groendyke's classification of the accident as preventable or non-preventable, subject to plaintiff's right to request a bench conference if the evidence becomes relevant at trial. Dkt. # 82, at 10. Defendants' request to exclude evidence concerning Groendyke's preventability determination is granted as unopposed. Earlier in this Opinion and Order, the Court explained that both parties would be permitted to rely on evidence of the drivers' physical and mental conditions at the time of the accident, and defendants' request to exclude evidence that Redd suffered from sleep apnea is denied. See supra, at 10. The Court will consider the three remaining disputed issues raised in defendants' motions in limine.

Inaccuracies in Redd's Electronic Logs

Defendants ask the Court to exclude evidence that Redd kept incomplete or inaccurate logs, because this evidence would not be relevant to any issue at trial. Dkt. # 38-1, at 7. Plaintiff argues that the jury could "infer from improperly completed forms that, among other things, the driver was inattentive to his duties on the day in question." Dkt. # 54, at 7. However, Redd's general attentiveness to his non-driving employment duties will not be relevant at trial, and the primary issue will be how the accident occurred. The Court finds that evidence as to alleged inadequacies in Redd's logs should preliminarily be excluded, subject to plaintiff's right to renew this motion should anything occur at trial to make the electronic logs relevant.

Admissibility of Byrd's Post-Accident Statement

Defendants argue that Byrd made a hearsay statement to a first responder, Robert Horsman, but that the statement is not admissible under any exception to the hearsay rule. Dkt. # 81, at 2-3. The key statement at issue is Byrd's alleged statement to Horsman that "the son of a bitch cut me off," and it is clear from the context of the statement that Byrd is attempting to place blame for the accident on Redd. Dkt. # 81-1, at 4. Plaintiff responds that the statement is admissible as an excited utterance, because Byrd made the statement shortly after the accident and the statement was made after Byrd had been seriously injured in the accident.

The parties do not dispute that Byrd's statement would constitute hearsay, and hearsay statements are inadmissible unless a federal statute or the Federal Rules of Evidence create an exception allowing for the admissibility of the statement. Fed. R. Evid. 802. Under Fed. R. Evid. 803(2), a statement is not excluded by the rule against hearsay if it is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it

caused." This is known as an excited utterance, and the party seeking to admit a statement under this exception to the hearsay rule must establish the following elements: "(1) a startling event, (2) the declarant made the statement under the stress of the event's excitement, and (3) a nexus exists between the content of the statement and the event." United States v. Magnan, 863 F.3d 1284, 1292 (10th Cir. 2017). Courts should consider additional factors such as "the amount of time between the event and the statement; the nature of the event; the subject matter of the statement; the age and condition of the declarant; the presence or absence of self-interest; and whether the statement was volunteered or in response to questioning." United States v. Pursley, 577 F.3d 1204, 1220 (10th Cir. 2009). Defendants argue that Byrd had sufficient time to contemplate after the accident and he made a statement that was obviously in his self-interest. Dkt. # 87, at 7. However, plaintiff responds that the statement was made approximately 10 minutes after the accident and Byrd was still suffering from the stress of the accident when he made the statement. Dkt. # 82, at 6. The Court finds that the admissibility of Byrd's statement is not clear-cut under Rule 803(2), and a determination as to the admissibility of the statement should be made at trial. There are factors tending to support each sides' argument and it would be preferable to rule on this issue at trial after presentation of evidence as to the six Pursley factors.

Admissibility of Eyewitness Testimony

Defendants ask the Court to exclude the testimony of Mark Kane, Mark Marshall Kane, and Katherine Kane, because they did not have an adequate vantage point to observe the accident and their eyewitness testimony would mislead the jury. Dkt. # 81, at 7-9. Defendants argue that the Kanes' deposition testimony is inconsistent with the GPS tracking data as to the location and speeds of both tractor-trailers, and it is unlikely that the Kanes actually observed the collision. Id. at 8.

Plaintiff responds that the Kanes will testify that they saw both tractor-trailers before the accident occurred, and their testimony will be relevant and helpful to the jury in resolving plaintiff's claims. Dkt. # 82. The Court has reviewed the deposition testimony of each of the Kanes, and they all claim to have observed the tractor-trailers before the collision and intend to testify that Redd's vehicle initiated the accident. The points raised by defendants go to the weight that the finder of fact may decide to give to the testimony, but defendants' arguments do not go to the admissibility of the proposed testimony. Instead, defendants may cross-examine the Kanes about the circumstances under which they viewed the two tractor-trailers, including any obstruction to their view of the vehicles, and it will be up to the jury to determine if the Kanes' testimony is credible. The Court finds that defendants' request to exclude the Kanes' testimony should be denied.

**IT IS THEREFORE ORDERED** that Defendant Ace American Insurance Company and Tyson Foods, Inc.'s Motion for Partial Summary Judgment and Brief in Support (Dkt. # 85) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine (Dkt. # 37) and Plaintiff's Second Motion in Limine (Dkt. # 80) are **granted in part** and **denied in part**: plaintiff's requests to exclude evidence that Byrd's estate received payments after the accident, evidence that Byrd filed for bankruptcy protection, evidence of a hearsay statement made by Robert Painter, and evidence that Tyson received payments from Groendyke's insurer are granted; the motion is denied in all other respects.

**IT IS FURTHER ORDERED** that Defendant Ace American Insurance Company and Tyson Foods, Inc's Motion in Limine and Brief in Support (Dkt. # 38) and Defendant Ace American Insurance Company and Tyson Foods, Inc.'s First Supplemental Motion in Limine and Brief in

Support (Dkt. # 81) are **granted in part** and **denied in part**: defendants' requests to exclude evidence of Groendyke's determination of preventability and evidence of inaccuracies in Redd's logs are granted; the motion is denied in all other respects.

**DATED** this 30th day of March, 2018.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE